FILED
2026 Sep-29 PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRANDON GLASS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DENVER MCCOOL, as Captain of the Shelby County Jail, in his individual capacity, and SOUTHERN HEALTH PARTNERS, INC.,**<br><br>**Defendants.** | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | **Case No.: 2:25-CV-01994-MHH** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Brandon Glass has sued Phillip McCool, the captain of the Shelby County Jail, and Southern Health Partners, the jail's healthcare provider, for interfering with his prescribed methadone therapy while he served a 20-day sentence in jail. (Doc. 12). Captain McCool has moved to dismiss Mr. Glass's complaint pursuant to Rule 12(b)(6). (Doc. 19). Captain McCool argues that he is entitled to qualified immunity. Southern Health also has moved to dismiss. (Doc. 25). This opinion resolves the defendants' motions.

***

Rule 12(b)(6) allows a defendant to move to dismiss claims for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule

12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In deciding a motion to dismiss, a court may consider a written instrument attached to the complaint as an exhibit "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005). In deciding a Rule 12(b)(6) motion to dismiss, a court must accept well-pleaded facts as true, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000), and must view the allegations in a complaint in the light most favorable to the non-moving party, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Accordingly, in this opinion, because Mr. Glass is the non-movant, the Court presents his factual allegations in the light most favorable to him.

***

Mr. Glass alleges that he was prescribed Lortab for pain management following a severe dirt-bike accident, and he became opioid-dependent. (Doc. 12, p. 4, ¶ 12). Mr. Glass has been diagnosed with opioid use disorder, a serious medical condition characterized by opioid cravings, compulsive use, tolerance, and severe withdrawal symptoms. (Doc. 12, pp. 4–5, ¶¶ 12–13). In February 2022, under the direction of his medical doctor, Dr. Glenn Archibald at the Shelby County Treatment Center, Mr. Glass began a methadone maintenance treatment program. (Doc. 12, pp. 1, 5–6, ¶¶ 2, 20).

Three years later, in May 2025, Mr. Glass was sentenced to 20 days in the Shelby County Jail for trespass and theft; Mr. Glass was to report to the jail on July 9, 2025. (Doc. 12, p. 6, ¶ 21). In anticipation of Mr. Glass's incarceration, the Shelby County Treatment Center issued an updated methadone prescription and contacted Southern Health Partners, the entity responsible for inmate medical care at the jail, to ensure uninterrupted continuation of Mr. Glass's treatment while in custody. (Doc. 12, p. 6, ¶¶ 22–23).

Mr. Glass alleges that Southern Health maintains a practice of limiting OUD treatment to Suboxone and does not provide methadone maintenance therapy to incarcerated patients. (Doc. 12, p. 7, ¶ 25). According to Mr. Glass, abruptly stopping methadone or substituting Suboxone for methadone without tapering can

trigger severe withdrawal and substantially increase risks of relapse, overdose, and death. (Doc. 12, p. 8, ¶¶ 30–34). Mr. Glass asserts that administering Suboxone to a patient physically dependent on methadone without proper tapering can precipitate acute withdrawal syndrome due to the displacement of full opioid agonists from opioid receptors. (Doc. 12, p. 9, ¶¶ 35–36).

Mr. Glass asserts that the FDA warning label for Suboxone warns that "[p]atients dependent upon methadone or long-acting opioid products may be more susceptible to precipitated and prolonged withdrawal during induction than those on short-acting opioid products." (Doc. 12, p. 9, ¶ 37). The label reads:

> "Buprenorphine/naloxone combination products have not been evaluated in adequate and well-controlled studies for induction in patients who are physically dependent on long-acting opioid products, and the naloxone in these combination products is absorbed in small amounts by the sublingual route and could cause worse precipitated and prolonged withdrawal. For this reason, buprenorphine monotherapy is recommended in patients taking long-acting opioids when used according to approved administration instructions. Following induction, the patient may then be transitioned to once-daily SUBOXONE sublingual film."

(Doc. 12, pp. 9–10, ¶ 38). Mr. Glass alleges that medical personnel employed by Southern Health were aware of the information contained in the FDA-approved warning label for Suboxone. (Doc. 12, p. 10, ¶ 39). Mr. Glass asserts that discontinuing methadone maintenance therapy or transitioning a patient receiving the therapy to Suboxone without tapering is not medically appropriate for individuals prescribed methadone maintenance therapy to treat opioid use disorder.

(Doc. 12, p. 10, ¶¶ 40–41).

On July 2, 2025, seven days before Mr. Glass was to report to the Shelby County Jail to serve his sentence, a nurse at the Shelby County Treatment Center contacted the Shelby County Jail to coordinate continued methadone dosing and advised that Mr. Glass required uninterrupted treatment to avoid dangerous, painful withdrawal. (Doc. 12, p. 10, ¶ 42). The nurse at Shelby County Jail, Nurse Erica, refused to administer methadone and requested a prescription for Suboxone. (Doc. 12, p. 11, ¶ 43).

Susan Staats-Combs, the Shelby County Treatment Center director, then called the Shelby County Jail and asked that the person in charge call her. (Doc. 12, p. 11, ¶ 46). Justin Watkins returned Director Staats-Combs's call and stated that he spoke to a lieutenant and a captain at the jail, and both indicated that methadone never had been permitted at the jail and would not be allowed in the future. (Doc. 12, pp. 11-12, ¶¶ 47, 49).

The same day, July 2, 2025, Director Staats-Combs also called Southern Health. (Doc. 12, p. 12, ¶ 49). In an email that she sent following the call, Director Staats-Combs indicated that one of the Treatment Center's nurses had called the jail and offered to bring Mr. Glass's methadone to the jail "at no charge to the jail," and Nurse Erica replied that Mr. Glass would have to take Suboxone. (Doc. 12, p. 12, ¶ 49). Director Staats-Combs also described her conversation with Justin Watkins.

(Doc. 12, p. 12, ¶ 49). In a July 8, 2025 email to Southern Health, Director Staats-Combs offered again to bring methadone to the jail and proposed as an alternative that the jail bring Mr. Glass to the treatment Center on July 10 to receive his dose of methadone. (Doc. 12, p. 13, ¶ 51).

When Mr. Glass reported to the Shelby County Jail on July 9, 2025, he informed booking personnel that he was enrolled in methadone maintenance treatment and explained that discontinuation of the treatment would cause severe withdrawal and significant suffering. (Doc. 12, pp. 13–14, ¶¶ 52–54). The following day, July 10, Director Staats-Combs sent an email to Southern Health in which she stated that Mr. Glass would need his methadone that day and asked "How should I proceed." (Doc. 12, p. 14, ¶ 55). Southern Health's Hanna Bishop replied: "I will check with the jail and see what the plan is and let you know." (Doc. 12, p. 14, ¶ 56). Less than an hour later, at 1:22 p.m., Director Staats-Combs responded to Ms. Bishop and explained that she was about to drive to the jail with Mr. Glass's dose because it was a two-hour roundtrip drive, and she had tried to call the jail to discuss Mr. Glass's medication, but she was put on hold with no answer. (Doc. 12, p. 14, ¶ 57). Before she left her office, Director Staats-Combs emailed to Southern Health the text of a letter from Dr. Archibald in which he "unequivocally oppose[d]" substitution of Suboxone for methadone because "[f]orced tapering or abrupt discontinuation of methadone is medically inappropriate and presents a serious risk

to the patient's physical and psychiatric health, including heightened risk of withdrawal, destabilization, and overdose upon release." (Doc. 12, p. 15, ¶ 58). Dr. Archibald explained that Shelby County Treatment Center was "fully prepared to work with correctional health services to facilitate secure medication transfer, dosing schedules, and any necessary verification." (Doc. 12, p. 16, ¶ 58). That afternoon, Director Staats-Combs delivered Mr. Glass's daily methadone dose to the Shelby County Jail to prevent interruption of Mr. Glass's care. (Doc. 12, p. 16, ¶ 59).

The following day, July 11, the director delivered another dose of methadone to the jail for Mr. Glass. (Doc. 12, p. 17, ¶ 63). Director Staats-Combs saw Captain McCool at the jail, and he stated that the Shelby County Jail would not permit methadone treatment. (Doc. 12, p. 17, ¶ 65). "Director Staats-Combs explained to Captain McCool how dangerous it would be for [Mr. Glass] to suddenly stop his methadone treatment, stating that [Mr. Glass] would get very sick and suffer extreme physical and emotional pain." (Doc. 12, p. 18, ¶ 68). Captain McCool ignored Director Staats-Combs and walked away from her. (Doc. 12, p. 18, ¶ 68).

Later that day, Director Staats-Combs sent an email to Captain McCool in which she wrote that the Shelby County Jail should "fix this situation." (Doc. 12, p. 18, ¶ 69). Director Staats-Combs attached to the message "handouts" about a "patient's right to methadone treatment" and a video from the National Sheriff's Association about the administration of methadone. (Doc. 12, p. 18, ¶ 69). The jail

called Director Staats-Combs to let her know that she could return to the jail to pick up the methadone that she had left for Mr. Glass. (Doc. 12, p. 18, ¶ 70).

On July 14, five days into Mr. Glass's term of incarceration, Director Staats-Combs sent an email to the Shelby County Sheriff to ask to speak with him. (Doc. 12, pp. 18-19, ¶ 71). The sheriff wrote in response that he had "been advised by the county attorney not to speak with" Director Staats-Combs. (Doc. 12, pp. 18-19, ¶ 71). The sheriff added that Director Staats-Combs could talk to the county attorney or file a complaint. (Doc. 12, pp. 18-19, ¶ 71). Director Staats-Combs called the county attorney and sent him the information she provided to Captain McCool. (Doc. 12, p. 19, ¶ 72). Director Staats-Combs wrote: "The inmate needs his medication today! This inmate is only in jail 20 days." (Doc. 12, p. 19, ¶ 72).

Because Mr. Glass did not receive his prescribed methadone treatment, he experienced severe withdrawal symptoms, including bone and joint pain, nausea, vomiting, diarrhea, fever, sweating, chills, hypertension, tachycardia, depression, anxiety, insomnia, dysphoria, and suicidal ideation. (Doc. 12, pp. 19–20, ¶ 74). For several days, Mr. Glass was bedridden; he could not eat and could barely drink. (Doc. 12, p. 20, ¶¶ 75–76). He repeatedly requested his prescribed methadone, but the jail denied him methadone treatment throughout his 20-day incarceration, even after he was transferred to the medical unit. (Doc. 12, p. 20, ¶¶ 76–77).

After he completed his 20-day sentence, Mr. Glass was unable to immediately

resume methadone treatment, and he relapsed after more than two years of sobriety while on medication-assisted treatment. (Doc. 12, p. 20, ¶ 78).

On November 18, 2025, Mr. Glass filed this lawsuit against Captain McCool in his official and individual capacities and against Southern Health Partners. (Doc. 1). Pursuant to 42 U.S.C. § 1983, Mr. Glass asserts claims against the defendants under the Eighth Amendment (Doc. 12, pp. 21-24, ¶¶ 80-93). Mr. Glass seeks compensatory and punitive damages, injunctive relief, attorneys' fees, and costs. (Doc. 12, pp. 24-25, ¶¶ 94-101).

***

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Cruel and Unusual Punishments Clause, which bars "the unnecessary and wanton infliction of pain," prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103. Therefore, the state has "a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).

Southern Health is a private entity, but "[w]here a function which is traditionally the exclusive prerogative of the state (or here, county) is performed by

a private entity, state action is present." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (addressing private medical provider's contract with Duval County Jail). Because Southern Health contracted with Shelby County Jail to provide medical care to inmates, Southern Health functions as the equivalent of a county for purposes of § 1983. To plead an Eighth Amendment claim for deliberate indifference, Mr. Glass must adequately allege that Southern Health "had a 'policy or custom' of deliberate indifference" that produced the alleged constitutional violation. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310–11 (11th Cir. 2011); *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022). Evidence of a single unconstitutional incident does not establish a custom. *Roy*, 53 F.4th at 1347; *Craig*, 643 F.3d at 1310. A custom reflects "a longstanding and widespread practice that [] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Roy*, 53 F.4th at 1347.

Mr. Glass alleges that Southern Health maintained a "policy," "practice," or "custom" of refusing methadone treatment at the Shelby County Jail, but he does so on "information and belief." (Doc. 12, pp. 2, 7). In his amended complaint, Mr. Glass describes his inability to receive his prescribed methadone treatment, but he does not identify another inmate who Southern Health refused prescribed methadone treatment at the Shelby County Jail. Therefore, Mr. Glass has not stated a § 1983 claim against Southern Health because he has not identified an official Southern

Health policy or a longstanding custom that caused an alleged constitutional deprivation.[1]

***

Captain McCool contends that he is entitled to qualified immunity on Mr. Glass's § 1983 claim against him. Qualified immunity protects government officials from suits in their individual capacities, when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is a demanding standard that protects all but the plainly incompetent or those who knowingly violate the law." *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (internal quotations and citations omitted).

An official asserting qualified immunity has "the initial burden of raising the defense of qualified immunity by proving that his discretionary authority extended to his alleged actions." *Est. of Cummings v. Davenport*, 906 F.3d 934, 939 (11th Cir. 2018). "Once that threshold is satisfied, the burden shifts to the plaintiff to show

[1] When evaluating motions to dismiss, district courts generally must assume that a fact alleged on "information and belief" is truthful, *Doe v. Samford University*, 29 F.th 675, 692 (11th Cir. 2025), but when the matters alleged on information and belief are "purely conclusory allegations" that omit "'factual enhancement,'" a district court must "separate[e] out the complaint's conclusory legal allegations" and determine whether the remaining factual allegations, accepted as true, are sufficient to state a claim, *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Here, the Court cannot accept Mr. Glass's conclusory allegations concerning a policy or custom because Mr. Glass has not offered facts to establish a policy or custom.

that the official violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bridges*, 155 F.4th at 1313 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). Therefore, a motion to dismiss on qualified immunity grounds "will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Mr. Glass acknowledges that Captain McCool acted within the scope of his discretionary authority in refusing to administer methadone to Mr. Glass during his 20-day period of incarceration. (*See* Doc. 12, pp. 3–4, ¶ 10). Therefore, the Court must examine whether Captain McCool violated Mr. Glass's clearly established constitutional rights by refusing to administer methadone to Mr. Glass and providing Suboxone instead.

"To prevail on a claim of deliberate indifference, plaintiffs must satisfy both an objective and a subjective inquiry, and must establish a necessary causal link between the challenged conduct and their injuries." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (quotations and citations omitted). Under the objective inquiry, courts consider "whether the plaintiff experienced an 'objectively serious medical need.'" *Stalley*, 124 F.4th at 1283. A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quotations omitted). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). Either way, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotations and citations omitted).

Captain McCool "does not challenge whether or not [Mr. Glass] was suffering from a serious medical need with OUD." (Doc. 27, pp. 2–3). Mr. Glass alleges that he was diagnosed with opioid use disorder and had successfully treated that condition through a methadone maintenance program for more than two years. (Doc. 12, pp. 4–6, ¶¶ 12–20). He alleges that abruptly discontinuing methadone placed him at risk of severe withdrawal and other serious medical consequences, consequences that he in fact experienced. (Doc. 12, pp. 8–10, ¶¶ 30–38). Mr. Glass asserts that after his methadone treatment was discontinued, he experienced vomiting, diarrhea, fever, hypertension, tachycardia, depression, anxiety, insomnia, dysphoria, and suicidal ideation. (Doc. 12, pp. 19–20, ¶ 74). His condition became so severe that he could not eat, could barely drink fluids, and was largely bedridden for several days. (Doc. 12, p. 20, ¶¶ 75–76). These allegations plausibly establish that Mr. Glass suffered from a serious medical need that, if left unattended, posed a substantial risk of serious harm. *See Keohane*, 952 F.3d at 1266.

That leaves the subjective component of the constitutional analysis. For the subjective element, courts consider whether a prison official acted with deliberate indifference to the plaintiff's serious medical need by examining whether the official "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley*, 124 F.4th at 1283. The plaintiff must show "'that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm.'" *Stalley*, 124 F.4th at 1283 (quoting *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (*en banc*).

Mr. Glass has plausibly alleged that Captain McCool was subjectively aware of the risk of serious harm that Mr. Glass faced if he did not receive methadone treatment. Mr. Glass alleges that Susan Staats-Combs, the Director of the Shelby County Treatment Center, (Doc. 12, p. 6, ¶ 23), went to the Shelby County Jail on July 11, 2025, (Doc. 12, p. 17, ¶ 63), two days after Mr. Glass entered the jail to serve his term of incarceration, (Doc. 12, p. 13, ¶ 52), and encountered Captain McCool, (Doc. 12, p. 17, ¶ 63). Mr. Glass alleges that Ms. Staats-Combs "explained to Captain McCool how dangerous it would be for [Mr. Glass] to suddenly stop his methadone treatment, stating that [Mr. Glass] would get very sick and suffer extreme physical and emotional pain." (Doc. 12, p. 18, ¶ 68). Later that day, Ms. Staats-Combs sent Captain McCool an email message to which she attached information

about the risks associated with a "blanket denial of methadone." (Doc. 12, p. 18, ¶ 69). Mr. Glass contends that, at the jail, Captain McCool told Ms. Staats-Combs that the Shelby County Jail had never allowed methadone treatment and would never allow the treatment, and he walked away from Ms. Staats-Combs after she informed him that Mr. Glass would become ill and experience extreme pain if the jail discontinued his methadone treatment. (Doc. 12, p. 18, ¶ 68). The Shelby County Jail refused the methadone that Ms. Staats-Combs delivered to the jail for Mr. Glass. (Doc. 12, p. 18, ¶ 70). Mr. Glass asserts that Captain McCool discontinued his methadone treatment. (Doc. 12, p. 21, ¶¶ 82–83). Mr. Glass alleges that he subsequently suffered severe withdrawal, including vomiting, diarrhea, fever, hypertension, tachycardia, depression, anxiety, insomnia, dysphoria, and suicidal ideation. (Doc. 12, pp. 19–20, ¶ 74). He alleges that his condition became so severe that he could not to eat, could barely drink fluids, and was largely confined to his bed for several days. (Doc. 12, p. 20, ¶¶ 75–76). He alleges that he was moved to the medical unit where he continued to suffer severe methadone withdrawal symptoms. (Doc. 12, p. 20, ¶ 77). Taken together, these allegations plausibly establish that Captain McCool was subjectively aware of a risk that eliminating Mr. Glass's established methadone treatment would result in serious harm.

These allegations permit a reasonable inference that Captain McCool knew that Mr. Glass faced a substantial risk of serious harm if Mr. Glass did not receive

his prescribed methadone doses, and Captain McCool deliberately disregarded that risk. That is sufficient at the pleading stage to plausibly allege the subjective component of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that an official must "know[] of and disregard[] an excessive risk to inmate health or safety" to act with deliberate indifference).

Captain McCool cannot succeed on his motion to dismiss by characterizing himself as a non-medical employee when Mr. Glass has plausibly alleged that Director Staats-Combs informed Captain McCool of Mr. Glass's specific serious medical need for prescribed methadone treatment and that Captain McCool deliberately failed to respond. *See Foster v. Maloney*, 785 Fed. Appx. 810, 816–19 (11th Cir. 2019). Nor can Captain McCool succeed by analogizing the situation to cases in which the Eleventh Circuit has held that prison officials and medical staff need not fast forward to the most aggressive forms of treatment for long-term illnesses and disabling conditions when prison officials may provide less-aggressive treatment that falls within the constitutionally permissible spectrum of medical interventions. *See*, *e.g.*, *Hoffer v. Sec., Fla. Dep't of Corrections*, 973 F.3d 1263 (11th Cir. 2020) (finding that the defendant did not have an obligation under the Eighth Amendment to provide state-of-the-art, expensive drugs to all inmates with chronic Hepatitis-C, even those who "have yet to exhibit serious symptoms"); *see generally Hamm v. DeKalb Cnty.*, 774 F.2d 1267, 1575 (11th Cir. 1985) ("Although

Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.”). Here, Captain McCool was warned of serious medical consequences that Mr. Glass would experience within a brief, 20-day period of incarceration if Mr. Glass did not receive his prescribed dose of methadone.

Captain McCool argues that, per the FDA, the Suboxone the Shelby County Jail administered to inmates with opioid use disorder is an acceptable treatment alternative to methadone and that Mr. Glass merely contends that Suboxone is not as effective as methadone. (Doc. 27, pp. 1–2). Captain McCool adds that Mr. Glass has not alleged that the jail “had a history of incidents relating to substituting suboxone over methadone such that [Captain] McCool would have any inkling that the denial of methadone, regardless of the use of suboxone, put this particular Plaintiff at substantial risk.” (Doc. 27, p. 4). That is true, but Mr. Glass has alleged something more trustworthy and more chronologically relevant that should have given Captain McCool much more than an inkling that the denial of methadone to Mr. Glass would place Mr. Glass at substantial risk. Captain McCool met with the individual charged with treating Mr. Glass’s OUD when she brought a dose of methadone to the jail for Mr. Glass and explained to Captain McCool the severe health risks that Mr. Glass was facing if Captain McCool refused Mr. Glass methadone. And Director Staats-Combs emailed literature to Captain McCool the

same day to substantiate the information she provided in her conversation with Captain McCool. In the face of this specific warning about an inevitable, immediate, severe consequence of the jail's failure to provide a particular treatment, namely the methadone doses that Mr. Glass's OUD treatment provider supplied to the jail at no cost, Captain McCool cannot feign ignorance.

The factual allegations in Mr. Glass's amended complaint place Captain McCool's conduct beyond the protection of qualified immunity at the pleading stage. Because Mr. Glass plausibly alleges that Captain McCool violated Mr. Glass's Eighth Amendment rights and because the right to be free from deliberate indifference to a serious medical need was clearly established, Captain McCool has not established his affirmative defense of qualified immunity on the face of the complaint.

***

For the reasons discussed, the Court grants Southern Health's motion to dismiss and denies Captain McCool's motion to dismiss. The Clerk of the Court shall please TERM Docs. 19 and 25 and enter an initial order. Within 14 days of this opinion, Mr. Glass and Captain McCool shall confer and submit their Rule 26(f) report in accordance with the initial order.

**DONE** and **ORDERED** this September 29, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE